UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SK Enterprises of North Florida, Inc., | Civil Action No. 0:19-cv-01960 |
| Plaintiff, | |
| v. | **PLAINTIFF'S COMPLAINT** |
| C.H. Robinson Company, and<br>C. H. Robinson Company, Inc | DEMAND FOR JURY TRIAL |
| Defendants. | |

For its Complaint against C.H. Robinson Company ("CHR") and C.H. Robinson Company Inc, ("Inc."), the Plaintiff, SK Enterprises of North Florida, Inc. ("SK") alleges and states as follows:

1. Plaintiff is a Florida Corporation with its principal offices in Quincy, Florida and a citizen of the State of Florida.

2. CHR and Inc. are Fortune 300, Delaware corporations authorized to conduct business in the State of Minnesota with their principal place of business in Eden Prairie, Minnesota.

3. The Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 and 7 U.S.C. § 499e, the Perishable Agricultural Commodities Act. This Court has diversity jurisdiction under 28 U.S.C. §1331 as the parties are diverse and the amount in controversy exceeds the sum of $75,000.

4. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

5. Venue is proper in this district due to the contractual venue provision contained in the parties' agreement.

6. All conditions precedent to this action have been performed or have occurred.

**COMMON FACTS**

7.       Inc. has assumed all liability of CHR related to distribution of fruit on consignment by CHR.

8.       In the years 2012 through 2013, Defendant CHR acted as an exclusive sales agent for watermelons supplied by the Plaintiff.  As part of those duties, Defendant CHR obtained transportation services from third party carriers to facilitate sales of Plaintiff's watermelons. Buyers of watermelons require transportation of the melons from the facilities of Plaintiff to their final destinations at the buyers' premises. Upon information and belief, Defendant CHR billed customers on a delivered basis which included both product cost and these freight charges but did not disclose these charges and its profits therefrom to Plaintiff before or after the sale and delivery of the watermelons. According to its United States Securities Exchange Commission ("SEC") filings, Defendant CHR does not own the trucks it utilizes to provide transportation services, but rather utilizes independent truckers for the transportation services that the Defendant CHR provides.

9.       In its 2018 10-K filing with the SEC, page 4, Defendant CHR states as follows:

Transportation and Logistics Services

CHR provides freight transportation and related logistics and supply chain services. Our services range from commitments on a specific shipment to much more comprehensive and integrated relationships. We execute these service commitments by investing in and retaining talented employees, developing cutting edge proprietary systems and processes, and utilizing a network of contracted transportation providers, including, but not limited to, contract motor carriers, railroads, and air and ocean carriers. We make a profit on the difference between what we charge to our customers for the totality of services provided to them and what we pay to the transportation providers to handle or transport the freight. While industry definitions vary, given our extensive contracting to create a flexible network of solutions, we are generally referred to in the industry as a third-party logistics company.
We provide the following transportation and logistics services:
•

    Truckload: Through our contracts with motor carriers, we have access to dry vans, temperature-controlled vans, flatbeds, and bulk capacity. We connect our customers with carriers who specialize in their transportation lanes and product types, and we help carriers optimize the usage of their equipment.

- 

    Less than Truckload: ("LTL") transportation involves the shipment of single or multiple pallets of freight. We focus on shipments of a single pallet or larger, although we handle any size shipment. Through our contracts with motor carriers and use of Navisphere, we consolidate freight and freight information to provide our customers with a single source of information on their freight. In many instances, we will consolidate partial shipments for several customers into full truckloads.

    10.    Through the year 2018, the produce division of CHR, known also as Robinson Fresh, reported its financial results in SEC filings as a separate division from the other divisions of CHR.  Even though Robinson Fresh is a produce supply division with only 4% of the revenues of operating of CHR, the profits which Robinson Fresh makes by controlling freight operations of fresh produce are substantial.  According to CHR's 2018 10-K, the profits attributable to freight by Robinson Fresh were higher than the income that it made from selling produce.  Transportation of fresh produce received on consignment by Robinson Fresh, and the secret self-dealing profits therefrom, is more profitable than the commissions that it was paid as the exclusive sales agent of growers.

    11.    For reasons that have not yet been revealed, CHR changed its financial reporting in its mandatory filings with the SEC commencing with its 8-Q report on May 1, 2019.  CHR stated in it 8-Q that it would no longer separately report freight revenues for Robinson Fresh as part of its required SEC filings.  Perhaps not coincidentally, Robinson Fresh's practices of making substantial, secret profits on freights on consignment transactions was made public in an amendment in another suit against CHR shortly before CHR publicly announced its accounting policy changes.

12.     Upon information and belief, Defendant CHR sold Plaintiff's product on a delivered basis to customers.  This type of sale included the freight charge made by the third-party carrier along with the cost of the fruit and the profit CHR allocated to itself.  As part of its self-dealings, Defendant made an arbitrary allocation of how much of the delivered sales price paid by the final customer would be allocated to freight charges and how much would be allocated to the fruit sale that would be reported to Plaintiff.  At no time, did Defendant CHR provide Plaintiff with an accounting or bill for freight services provided for delivery of Plaintiff's melons on consignment during 2012 through 2013.  To the contrary, the reporting system utilized by the Defendant CHR to report sales results to Plaintiff was designed to hide from Plaintiff and other consignment growers the secret profits that Defendant CHR was making by only reporting to Plaintiff and others an arbitrarily assigned, fictitious "FOB" sales price on sales liquidations to Plaintiff.  Such sales were not in fact FOB, but rather delivered.

13.     Defendant CHR also required that all transportation for watermelons consigned by Plaintiff to Defendant CHR be arranged by CHR.  Regardless of the detriment to Plaintiff or other consignors of fresh produce, Defendant CHR employees were told that their employment would be terminated if they did not utilize third party transportation providers arranged by CHR.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS AND IMPLIED DUTIES UNDER THE**
**PERISHABLE AGRICULTURAL COMMODITIES ACT**

14.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 13 inclusive of this Complaint, as though fully set forth in this paragraph 14.

15.     Interstate produce trade within the United States is governed by a federal statute, the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 *et seq*. ("PACA").  Plaintiff's

4

watermelons were supplied to CHR in interstate commerce. For this reason, all of the transactions between Plaintiff and Defendants were subject to PACA.

16. Defendant CHR, as a dealer in produce in interstate commerce is subject to regulations under PACA. Inc. holds a PACA license number 20061042 issued by the USDA under PACA.

17. The PACA statutory text expressly prohibits rendition of false or misleading accountings of produce received on consignment:

> It shall be unlawful in or in connection with any transaction in interstate or foreign commerce-
> (4) For any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant, or bought or sold, or contracted to be bought, sold, or consigned, in such commerce by such dealer, or the purchase or sale of which in such commerce is negotiated by such broker; or to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction; or to fail to maintain the trust as required under Section 499e(c) of this title;

18. Defendant CHR is required by PACA regulations, specifically 7 CFR 46.32(b), to maintain a complete archive of all transactions, charges and sales related to each lot of produce received on consignment from all suppliers, including Plaintiff. Additionally, Defendant CHR is required to render a true and correct accounting of all transactions related to produce supplied on consignment by Plaintiff. The regulations specifically provide that Defendant CHR to truly and correctly account to Plaintiff for consignment charges as follows:

> Consignments, to account by rendering a true and correct statement showing the date of receipt and date of final sale, the quantities sold at each price, or other disposition of the produce, and the proper, usual or specifically agreed upon selling charges and expenses properly incurred or agreed to in the handling thereof, plus any other information required by §46.29;

    (All licensees who accept produce for sale on consignment or on joint account are required to exercise reasonable care and diligence in disposing of the produce promptly and in a fair and reasonable manner…..Complete and detailed records shall be prepared and maintained by all commission merchants and joint account partners covering produce received, sales, quantities lost, dates and cost of repacking or reconditioning, unloading, handling freight, demurrage or auction charges, and any other expenses which are conducted on the accounting, in accordance with provisions of 46.18 through 46.23. When rendering account sales for produce handled for or on behalf of another, an accurate and itemized report of sales and expenses charged against the shipment shall be made. It is a violation of section 2 of the [PACA] to fail to render true and correct accountings in connection with consignments or produce handled on joint account. Charges which cannot be supported by proper evidence in the records of the commission merchant or joint account partner shall not be deducted. The commission merchant or joint account partner may be held liable for any financial loss and for other penalties provided by the [PACA], due to his negligence or failure to perform any specification or duty, express or implied, arising out of any transaction subject to the Act.

    19.    Defendant CHR breached its duties owed to Plaintiff under PACA regulations by providing false accountings to Plaintiff that did not truly and correctly account for the results of consignment sales. Instead, Defendant CHR actively sought to prevent the discovery of its breach of its duties under PACA regulations by providing Plaintiff with false accountings reflecting fictitious FOB prices, arbitrarily created by CHR, to cover-up the illegitimate freight profits it was making on freight charges of third-party freight providers.

    20.    PACA specifically prohibits a sales agent from making profits from any other product or service without the fully informed, express consent of the consignor. However, Defendant CHR did not disclose this hidden profit source to Plaintiff and did not obtain the express, fully informed consent of Plaintiff. Instead, Defendant CHR actively hide the illegitimate profit gained at the expense of Plaintiff. Defendant CHR's actions to hide its misdeeds clearly show that it knew its hidden profits were illegitimate and in violation of the law. Consequently, Defendant's acts and omissions were knowingly made in direct violation of Defendant CHR's express duties under PACA and its regulations.

21. In its Exclusive Sales Agent agreement, Sections 4.02 and 4.04, CHR agreed to report the true sales price for all transactions in Plaintiff's produce and to take its sole profit, its sales commission from the sales of product. CHR violated this express contractual provision by reporting false, artificially manufactured sales prices to the Plaintiff.

22. PACA contains a civil remedy for breaches of unfair conduct in 7 U.S.C. § 499e(a) and (b).

23. Due to the unfair conduct by Defendant, both the express contractual duties and the duties created under PACA and is regulations, Plaintiff has been damaged in an amount in excess of $100,000.00. Inc., as assignee of CHR, is jointly liable for the damages suffered by Plaintiff.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

24. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 22 inclusive of this Complaint, as though fully set forth in this paragraph 23.

25. Defendant CHR's contracts with Plaintiff are Sales Agent contracts. Under Minnesota law, as well as under PACA, sales agents owe their principals a fiduciary duty to place the principal's interest above that of the agent, to correctly account for their sales activities, revenues and expenses and more particularly to not make a secret, self-dealing profit from the subject matter of the agency.

26. Defendant CHR as an exclusive sales agent for Plaintiff owed duties in connection with its receipt of watermelons on consignment. Such duties include the duty to not self-deal as part of the consignment sales agent process, unless it obtains the fully informed, express consent of the Plaintiff. This duty is provided under PACA, and under Minnesota Law

7

pertaining to fiduciary duty and the duties of good faith and fair dealing owed under all contracts.

27. Upon information and belief, Defendant CHR has included transportation services for watermelons shipped to final purchasers as part of delivered sales price invoices. When Defendant sells product on consignment on behalf of Plaintiff, it only has the right to receive a 10% commission of the FOB sales price. However, Defendant CHR bills ultimate purchasers for transportation services as part of a single, delivered sales price for watermelons. Defendant CHR then arbitrarily allocates a portion of the delivered sales price above and beyond the actual transportation costs paid to the third-party motor carrier that shipped the product. The arbitrarily reduced "FOB" sales price component of the total sale is then reported to the grower, Plaintiff was kept unaware that the price of its produce was arbitrarily reduced to provide CHR with an illegitimate profit not provided for by the Agreement. The purported sales price reported to Plaintiff is nothing more than a fiction created by the Defendant as part of its intentional scheme to cover up its secret, additional profit that is made up of the difference between what the third-party freight carrier charged and what CHR arbitrarily assigns as a transportation charge for its own profit above that to which it is entitled under the Agreement.

28. Defendant CHR's service model, including its policy that all transportation must be booked through its transportation branch, creates a conflict of interest between its duties as a commission merchant for which it receives only a 10% commission and its role as a party that seeks transportation from third parties, the profits of which are potentially much greater. This inherent conflict of roles as transportation provider and exclusive sales agent for Plaintiff creates an incentive to reduce the fictitious sales price reported to Plaintiff, for which it receives only a 10% commission, and in turn to increase the charge for transportation services for which

Defendant can obtain a higher return. The conflict, as described in Defendant's 10-K filing cited in paragraph 9 above, arises out of the separate, undisclosed profit that Defendant makes between what it pays the ultimate transportation provider and what it bills customers, such as those who purchased Plaintiff's melons. Under PACA, the common law of agency and the contractually implied duty of good faith and fair dealing, all self-dealing by an agent must be expressly authorized by the principal, in this case the Plaintiff, after full disclosure of all relevant facts. PACA further places a duty on Defendant to minimize additional costs when it sells on behalf of a consignor. Defendant has not made any such disclosure of self-dealing, nor received the express consent required under applicable law. Instead, Defendant CHR actively hides the fact that the prices of Plaintiff's watermelons were being arbitrarily reduced by Defendant CHR. As a result, Plaintiff suffered significant losses in profits due to the undisclosed and arbitrary reduction in the reported sales price of its watermelons.

29.     As noted above, not only has Defendant CHR failed to accurately report and account sales to Plaintiff, it has taken affirmative steps to conceal its secret freight profit from produce suppliers such as Plaintiff. The sales reports provided to Plaintiff only contain the fictitious sales price, and a commission charged on the fictitious sales price. Nowhere do the CHR sales reports provided to Plaintiff reflect the substantial, secret, self-dealing profit that Defendant takes between the amount which it arbitrarily assigns to freight and the actual freight charged by the third-party freight provider. Such attempts to hide the true nature of its sales from growers such as Plaintiff is a further breach of the fiduciary duty owed to Plaintiff by Defendant as a sales agent, and evidence that it knowingly and intentionally violated its duties under the law.

30.     Plaintiff has been damaged because of Defendant's breach of fiduciary duty in an amount in excess of $100,000.00.  Inc., as assignee of CHR, is jointly liable for the damages suffered by Plaintiff.

### THIRD CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

31.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 inclusive of this Complaint, as though fully set forth in this paragraph 30.

32.     Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing.  The acts and omissions of Defendant stated herein violated the implied covenant of good faith and fair dealing based upon the subject contract executed between the parties.  Defendant's acts and omissions breached its implied duty of good faith and fair dealing by making a secret, illegal profit on freight services provided by third parties without the express, informed consent of Plaintiff.

33.     Plaintiff has been damaged because of Defendant CHR's breach of its implied duty of good faith and fair dealing in an amount of in excess of $100,000.00.  Inc., as assignee of CHR, is jointly liable for the damages suffered by Plaintiff.  Inc., as assignee of CHR, is jointly liable for the damages suffered by Plaintiff.

### FOURTH CAUSE OF ACTION – ACTION FOR
### AN ACCOUNTING OF TRANSPORTATION AND OTHER THIRD-PARTY
### CHARGES

34.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 inclusive of this Complaint, as though fully set forth in this paragraph 34.

35.     Plaintiff seeks an accounting of all freight and other third-party charges, including any rebates on packing materials and shipping costs, by Defendant to all ultimate purchasers of

Plaintiff's watermelons for the years of 2012-2013.  Plaintiff demands that such accounting include all freight charges, transportation charges, logistics charges, rebates and any other charges billed to and paid by the ultimate customer.  Plaintiff further demands that such accounting include the actual rebates from packaging and shipping vendors, and the actual payments made by Defendant to the truckers or other service providers contracted by Defendant to provide transportation of Plaintiff's watermelons during the years 2012 through 2013.  As part of the accounting, Plaintiff demands that Defendant provide all back up documents to support the sales, rebates, commissions, charges and payments listed in the accounting.  Inc., as assignee of CHR, is jointly liable for the accounting sought by Plaintiff.

## FIFTH CAUSE OF ACTION – FOR FORFEITURE OF COMMSSIONS RECEIVED BY DEFENDANTS

36.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 35 inclusive of this Complaint, as though fully set forth in this paragraph 36.

37.  The Minnesota law of fiduciary relationships, as reflected in the Restatement of the Law of Agency (Third), Section 8.01, provides for forfeiture of commissions by an agent that violates its fiduciary duties under an agency relationship.

38.  CHR's substantial and intentional breach of its fiduciary duties owed to Plaintiff by taking secret profits on freight transactions on the sales of Plaintiff's watermelons make its sales commissions charged to Plaintiff for watermelon sales during the years 2013 until 2014 subject to forfeiture.  Plaintiff seeks as an additional remedy the forfeiture of all commissions received by CHR.

39.  The commission subject to forfeiture are estimated to be in excess of $100,000.00.

## SIXTH CAUSE OF ACTION—FOR FRAUDULENT CONCEALMENT AND TOLLING OF THE STATUTE OF LIMITATIONS

40. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39 inclusive of this Complaint, as though fully set forth in this paragraph 40.

41. Defendant CHR violated the Minnesota law of fraudulent concealment because it knowingly, intentionally and/or with reckless disregard provided Plaintiff with a false accounting that concealed Plaintiff's causes of action. Because Plaintiff had no way of knowing of the freight topping by Defendant, or any other accounting discrepancies, Defendant's concealment could not have been discovered by Plaintiff through reasonable diligence.

42. The Minnesota law of fraudulent concealment provides that a party's fraudulent concealment stops the clock on the statute of limitations, and the clock does not restart until the aggrieved party discovers or has had a reasonable opportunity to discover their cause of action. Thus, when CHR provided Plaintiff with false sales reports that omitted CHR's self-dealing and illegitimate profits through the topping the freight costs for transporting Plaintiff produce, the applicable statute of limitations as to Plaintiff's claims made herein stopped until Plaintiff discovered or had reason to discovery its causes of action.

WHEREFORE, Plaintiff prays for judgment as follows:

A. Against Defendants CHR and Inc. for the sum of at least $100,000.00 for breach of express and implied obligations under Section 2 of the PACA.

B. For entry of a Final Judgment against Defendants CHR and Inc. in the amount of at least $100,000.00, plus costs for breach of fiduciary duty.

C. For entry of a Final Judgment against Defendants CHR and Inc. in the amount of at least $100,000 for breach of the duty of good faith and fair dealing

  D. For entry of an order requiring Defendants CHR and Inc. to render an accounting and all supporting documents of all freights charged its customers for the watermelons supplied by Plaintiff in the years 2012 through 2013, including the true sales invoices and prices for Plaintiff's consigned product, the charges paid Defendants CHR and Inc. (or any of its affiliates or subsidiaries), and the charges paid to the motor carriers and other third-party service providers providing services related to the consigned melons.

  E. Ordering the forfeiture of commissions received by Defendants in the years 2012-2013.

  F. For entry of a Final Judgment against Defendants CHR and Inc. for exemplary damages in an amount to be determined by the jury.

  G. For such other and further relief as the court deems appropriate upon consideration of this matter.

Dated: July 25, 2019.

            Respectfully submitted,

            */s/* Craig A. Stokes
            Craig A. Stokes
            Minnesota Attorney ID # 0390849
            Admitted in USDC Minnesota
            cstokes@stokeslawofffice.com
            STOKES LAW OFFICE LLP
            3330 Oakwell Court, Suite 225
            San Antonio, TX 78218
            Telephone (210) 804-0011
            Facsimile (210) 822-2595

            *Attorneys for Plaintiff*
            *Wainwright Brothers Farms, LLC*